## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

MARY ELIZABETH SMITH,

     Plaintiff,

v.

                                   CASE NO:   3:23-cv-628

AMERICAN NEIGHBORHOOD MORTGAGE
ACCEPTANCE CO., LLC d/b/a ANNIEMAC
HOME MORTGAGE,

     Defendant.

_____/

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

**COMES NOW** the Plaintiff, Mary Elizabeth Smith ("Plaintiff" or "Ms. Smith"), by and through her undersigned counsel, and, by way of this Complaint, seeks relief against Defendant American Neighborhood Mortgage Acceptance Co., LLC d/b/a AnnieMac Home Mortgage ("AnnieMac"), for violations of the Americans with Disabilities Act, 42 U.S.C. 12101 *et seq.* ("ADA"); Title VII of the Civil rights Act of 1964, as amended 42 U.S.C. §§ 2000(e) ("Title VII"); 42 U.S.C. § 1981 ("Section 1981") and the Florida Civil Rights Act of 1992, Florida Statutes §§ 760.01 ("FCRA"). In support thereof, Plaintiff states as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff is an adult female citizen and resident of the City of Jacksonville, Duval County, Florida.

2.      At all times relevant herein, Ms. Smith was qualified for her position and was able to satisfactorily perform all the essential functions of her job with or without accommodation.

3.      Defendant is a limited liability company with its headquarters in New Jersey and conducts business in the State of Florida. Specifically, Defendant has offices in many counties throughout the state of Florida, provides home mortgage loans throughout the State of Florida and engages in the hiring of employees in State of Florida including in Duval County, Florida. Defendant is and has been a covered employer within the meaning of the ADA, the FCRA, Title VII, and Section 1981.

4.      Plaintiff was a covered employee of the Defendant within the meaning of the ADA, the FCRA, Title VII and Section 1981, and worked for Defendant virtually while residing in Duval County, Florida.

5.      This court has jurisdiction over this case pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, 28 U.S.C. § 1367, 42 U.S.C. § 12117(a) and 42 U.S.C. § 2000e (5)(f)(3).

6.     A substantial part of the acts complained of herein occurred in Jacksonville, Duval County, Florida. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS FOR ALL CLAIMS

7.     Plaintiff was hired by Defendant as a full time Remote TPO Closer. Plaintiff worked for defendant from on or about April 5, 2021, until August 19, 2022, when she was placed on an involuntary unpaid leave of absence.

8.     Plaintiff suffers from a disability in that she was diagnosed with post-traumatic stress disorder, anxiety, major depression disorder and chronic migraine.

9.     At all times relevant herein, Plaintiff was qualified for her position and was able to satisfactorily perform all the essential functions of her job with or without accommodation.

10.    While working for Defendant, Plaintiff received high marks during Plaintiff's performance evaluations. As a result of her performance, Plaintiff was promoted to Wholesale Closing Team Lead ("Team lead") on September 16, 2021.

11.    At all times relevant hereto, Elizabeth Pitts ("Ms. Pitts"), a Caucasian individual, was an employee and agent of AnnieMac, acting directly and/or indirectly in the interest of AnnieMac.  Specifically, Ms. Pitts was employed as a Wholesale Closing Manager, and was a supervisor over Plaintiff.

12.     At all times relevant hereto, Edward Siler ("Mr. Siler"), a Caucasian individual, was an employee and agent of AnnieMac, acting directly and/or indirectly in the interest of AnnieMac.  Specifically, Mr. Siler was employed as Director of Correspondent Operations.

13.     At all times relevant hereto, Lisa Wypych ("Ms. Wypych"), a Caucasian individual, was an employee and agent of AnnieMac, acting directly and/or indirectly in the interest of AnnieMac. Specifically, Ms. Wypych was employed as Defendant's Vice-President of Human Resources.

14.     At all times relevant hereto, Michael Royer ("Mr. Royer"), a Caucasian individual, was an employee and agent of AnnieMac, acting directly and/or indirectly in the interest of AnnieMac. Specifically, upon information and belief, Mr. Royer, was employed as a Wholesale Lending & Consumer Direct Sales Chief Production Officer and was in a management position.

15.     At all times relevant hereto, Lynn Sermons ("Mr. Sermons") was employed by Defendant as a TPO Closer and worked on the same team as Plaintiff. Mr. Sermons and Ms. Smith were the only Black employees on their team.

16.     On or about December 13, 2021, Plaintiff reported to Ms. Wypych that her supervisor at the time, Ms. Pitts, had been retaliating against Plaintiff because Plaintiff expressed some concerns about Ms. Pitt's actions toward Plaintiffs ex-husband, which Plaintiff deemed inappropriate.

4

17.     Upon Ms. Wypych's request, Ms. Smith provided copies of email correspondences corroborating Ms. Smith's complaints to Ms. Wypych. Upon information and belief, Defendant took no action to curtail Ms. Pitts's behavior until Ms. Pitts was eventually laid off more than a month later for unrelated reasons. Ms. Wypych also never followed up with Plaintiff concerning her complaints. Further, Ms. Wypych did not indicate to Plaintiff that Plaintiff's complaints of retaliation were brought to Ms. Pitts's attention and that actions were taken to prevent further retaliatory action toward Plaintiff.

18.     On or about May 21, 2022, following another company-wide lay-off, Ms. Smith was demoted to the position of TPO Closer and Mr. Siler became Ms. Smith's direct supervisor.  Defendant informed Ms. Smith that even though she was demoted, she still needed to continue her work as a Team Lead until her new supervisor Mr. Siler could comfortably handle the demands of the position and take over the work she was doing.  Ms. Smith continued to work as both a Team Lead and a TPO Closer.

19.     From the time that Mr. Siler became Ms. Smith supervisor, Mr. Siler engaged in a campaign of discriminatory actions against Ms. Smith and Mr. Sermons, the only two Black employees on the team, by taking loan assignments that had previously been assigned to Ms. Smith and Mr. Sermons and transferring

them to non-Black employees, without warning, regardless of whether Ms. Smith and Mr. Sermons had already started working on the loans.

20.    The reassignment of the loans that Mr. Siler constantly engaged in directly and negatively affected Ms. Smith's performance metrics and income. Individuals hired in the position of TPO Closer for Defendant received financial incentives based on the total loan closed. Thus, taking way Ms. Smith's loan assignments directly impacted her performance metrics as well as her potential for earning the financial incentives that Defendant offered.

21.    On or about June 10, 2022, Ms. Smith was required to be present on a conference call where Mr. Siler and Mr. Royer issued a corrective action to Mr. Sermons, the only other Black closer on the team. Upon information and belief, Ms. Smith was required to be present on the phone conference to embarrass Mr. Sermons. Ms. Smith was never asked by Mr. Siler and/or Mr. Royer to be present on a conference call in which a Non-Black employee received a corrective action.

22.    On or about August 18, 2022, another employee requested Ms. Smith's help with a loan that was due to close the following day, and Ms. Smith agreed to help.

23.    On or about Friday August 19, 2022, at approximately 9:56 AM, Ms. Smith was informed that the loan would not close until the following Monday, August 22, 2022, due to issues concerning underwriting. Due to the nature of her

position, Ms. Smith would not be able to work on the closing unless and until the loan is cleared through the underwriting stage. Thus, since the loan had not "passed compliance," Ms. Smith was required to wait until she received notice that the loan was ready to close.

24.     At approximately 11:13 AM on the same day, Ms. Smith received an email correspondence indicating that the loan had "passed compliance". However, due to another worker having accessed the loan documents, Ms. Smith could not start working on the loan closing. Defendant's systems prevented more than one employee to access a specific loan at the same time. Ms. Smith replied to the email correspondence stating that she was waiting until she could access the loan to perform her job functions as a closer.

25.     Soon thereafter, Ms. Smith received a phone call from Mr. Siler. Mr. During this phone call, Mr. Siler accused Ms. Smith of not doing her work, even though Mr. Siler was aware that someone else had been working on the loan, which would have prevented Ms. Smith from accessing the loan. Mr. Siler proceeded to raise his voice at Ms. Smith, speak to Ms. Smith in a condescending manner using profane words, talk, preventing her from explaining her position, making demeaning remarks to Ms. Smith and falsely accusing Ms. Smith of not doing her work. Mr. Siler also accused Ms. Smith of failing to reply to email correspondences even

though another employee informed Mr. Siler that Ms. Smith had replied to the email correspondences concerning the loan.

26.     During the same phone call, Mr. Siler exclaimed that since Ms. Smith had already worked 40 hours at the time of the call that Ms. Smith needed to "get off [his] clock" as overtime hours were not previously approved and told Ms. Smith that Mr. Siler would be assigning the loan to a different closer. Upon information and belief, the loan was reassigned to a non-Black employee.

27.     Mr. Siler's comments concerning the overtime hours were another way to demean Ms. Smith and a pretext to assign the loan to a non-Black closer. Evidently, just a week prior, during a team meeting, Mr. Siler had alerted the team that employees were free to work overtime hours to get the job done and did not state that overtime hours had to be pre-approved. Yet, during the phone call with Ms. Smith, Mr. Siler indicated that prior approval was needed to work more than 40 hours per week. Moreover, during Ms. Smith's tenure with the company, she was never required to request prior approval when working more than 40 hours in a given week.

28.     During the August 19, 2022, phone call, Mr. Siler also indicated that Ms. Smith was underperforming because Ms. Smith should be closing more loans per day, even though Mr. Siler constantly reassigned loans that were previously assigned to Ms. Smith to non-Black employees regardless of whether Ms. Smith had

started working on the loan; despite Ms. Smith working as both a closer and a Team Lead; and despite Defendant not having enough work to allow all closers to close two loans per day.

29.    Immediately following the August 19, 2022, phone call from Mr. Siler, Mr. Siler sent Ms. Smith a "written summary" of the phone call. In that summary, Mr. Siler falsely claimed that he had a prior conversation with Ms. Smith on August 5, 2022, concerning her performance. Later, when Ms. Smith asked Mr. Siler to provide any documentation that he had a performance-related conversation with her on August 5, 2022, Mr. Siler could not provide such documentation. The false allegation made by Mr. Siler concerning the August 5, 2022, conversation was an effort by Mr. Siler to bolster a baseless corrective action on account of Ms. Smith's race.

30.    The discriminatory actions of Mr. Siler throughout his tenure as Plaintiff's supervisor through the constant interference with her work by reassigning the Black employees' loans to non-Black employees, issuing baseless corrective actions and creating false narratives in order to support baseless corrective actions; and speaking to Plaintiff in a condescending and demeaning tone created a hostile and intolerable work environment for Plaintiff and negatively affected Plaintiff physically, emotionally and mentally.

31.     As such, Ms. Smith attempted to contact Ms. Wypych and could not reach Ms. Wypych. Consequently, Ms. Smith submitted a written complaint to Defendant through Defendant's human resources department and upper management, reporting race discrimination at AnnieMac. Ms. Smith specifically stated that Black employees were subjected to disparate treatment in the workplace and that Ms. Smith was also subjected to a hostile work environment on account of her race, which negatively affected Ms. Smith. Ms. Smith then requested that Defendant take steps to curtail the discriminatory actions in the workplace. Defendant took no action to remedy the hostile and discriminatory work environment to which Ms. Smith was subjected.

32.     Rather, on Saturday August 20, 2022, Plaintiff received a phone call from Ms. Wypych concerning Plaintiff's August 19, 2022, email correspondence. Ms. Smith reiterated her complaints concerning the race discrimination and hostile work environment to which she was subjected at AnnieMac and further indicated that the discrimination has exacerbated her previously diagnosed anxiety and severe depression. Ms. Wypych did not inform Plaintiff that Defendant would take any action to curtail the discriminatory and hostile work environment. Rather, Ms. Wypych who was aware of plaintiff's disability and/or regarded Plaintiff as having a disability, immediately demanded that Plaintiff take a leave of absence. When Plaintiff opposed, Ms. Wypych told plaintiff in sum and substance that plaintiff was

not allowed to return to work the following Monday because she was placing Plaintiff on an involuntary leave of absence. Ms. Wypych's imposition of this involuntary leave of absence was discrimination due to Plaintiff's disability and race and in retaliation for Plaintiff's reports of race discrimination and the hostile work environment to which she was subjected at AnnieMac.

33.     On or about August 22, 2022, Defendant revoked Plaintiff's access to the Defendant's systems, such that Plaintiff could not return to work.

34.     On or about September 8, 2022, without Plaintiff's approval, Ms. Wypych sent a formal request to Mutual of Omaha Insurance Company ("Mutual of Omaha"), a FMLA administrative service provider, seeking that Plaintiff be placed on a leave of absence until November 11, 2022. Immediately upon reviewing Ms. Wypych's email correspondence to Mutual of Omaha, to Plaintiff was copied, Plaintiff immediately voiced her objection to being placed on leave.

35.     On or about September 18, 2022, Plaintiff again reported to Defendant, through Mr. Royer and other leaders, that she was subjected to a discriminatory, retaliatory and hostile work environment, subjected to false corrective actions, and was placed on an involuntary leave of absence despite her objections because of her disability and because Ms. Wypych perceived her as having a disability, and because of her race and in retaliation for her complaints concerning race discrimination at AnnieMac.  Defendant took no action to rectify the discriminatory, retaliatory, and

hostile work environment to which Plaintiff was subjected. In fact, Defendant through its owner, leaders and agents never responded to Plaintiff's correspondence. Rather, Defendant maintained its position that Plaintiff was to remain on involuntary unpaid leave.

36.     At some point following Plaintiff's objections to being placed on a leave of absence, Plaintiff received a phone call from Ms. Wypych. Ms. Wypych told Plaintiff in sum and substance that the only way that Plaintiff could preserve her job was to complete the FMLA and short-term disability paperwork. Based on Ms. Wypych's representation, Plaintiff ultimately applied completed the FMLA and short-term disability benefits paperwork because she was instructed to and because she was afraid of losing her job.

37.     On or about October 20, 2022, Plaintiff received documentations from Mutual of Omaha denying Plaintiff's request for short-term disability benefits.

38.     Defendant did not reinstate Plaintiff. Rather, on or about February 21, 2023, Defendant sent a termination notice to Plaintiff indicating that Plaintiff's employment would be terminated, effective February 28, 2022.

39.     To date, Plaintiff has not received the benefits to which she was entitled prior to the beginning of the involuntary unpaid leave of absence, including but not limited to the value of all paid time off ("PTO") accrued prior to August 19, 2022.

## ADMINISTRATIVE PREREQUISITES

40.     Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") for discrimination on account of her race and disability, and retaliation (the "Charge"). Pursuant to Section 760.11(1), the EEOC Charge satisfies the administrative prerequisites set forth in the FCRA.

41.     Subsequently, the EEOC issued a Notice of Right to Sue to Plaintiff. Plaintiff has filed this Complaint within 90 days of her receipt of the notice of right to sue and after 180 days of the filing of the EEOC Charge.

42.     All administrative prerequisites, if any, have been met for each claim brought in this Complaint, and each such claim is timely brought.

### COUNT I
### Claims against Defendant for Disability Discrimination and Hostile Work Environment in Violation of 42 USC §§12101 *et seq.*

43.     Plaintiff hereby incorporates and re-alleges by reference herein the allegations in Paragraphs 1 through 42 above as though set forth fully herein.

44.     Plaintiff suffers from impairments that substantially limit one or more of her major life activities. Therefore, Plaintiff has a disability.

45.     During her employment with Defendant, Plaintiff was a qualified person with a disability in that she could perform all the essential functions of her job with or without accommodation.

46.     At all times during Plaintiff's employment with Defendant, Plaintiff performed her job in a manner which should have met Defendant's reasonable expectations.

47.     Plaintiff was subjected to unwelcomed harassment and a hostile environment on account of her disability that was sufficiently severe or pervasive to alter the terms, conditions, privileges of her employment, thereby creating an unlawful hostile environment for Plaintiff on account of her disability.

48.     Plaintiff informed Defendant of her disability and Defendant regarded Plaintiff as having a disability, prior to Defendant's harassment of Plaintiff due to her disability and prior to Defendant Placing plaintiff on an involuntary unpaid leave of absence.

49.     Defendant unlawfully discriminated against Plaintiff because of her disability and created a hostile work environment for Plaintiff, which interfered with Plaintiff's employment and created an objectively intimidating, hostile, intolerable, and offensive work environment, in violation of 42 U.S.C. §§ 12101 *et seq*. Such unlawful harassment included, but was not limited to, acting in a demeaning and condescending manner toward Plaintiff, misconstruing conversations with Plaintiff in order to create the impression that Plaintiff requested a leave of absence, revoking Plaintiff's access to Defendant's systems such that she was not able to report to work, placing Plaintiff on involuntary unpaid leave despite Plaintiff's repeated objections,

requiring Plaintiff to remain on involuntary unpaid leave and requiring that she applied for FMLA leave and short term disability in order to preserve her job, treating Plaintiff differently than non-disabled employees and terminating Plaintiff.

50.    Plaintiff further provided Defendant sufficient time to remedy the intolerable and hostile work environment. However, Defendant failed to take the necessary steps to remedy the hostile work environment.

51.    Plaintiff's treatment by Defendant was different and discriminatory when compared to that of Defendant's similarly situated, non-disabled employees, including but not limited to, immediately placing Plaintiff on involuntary unpaid leave upon learning that the discriminatory and hostile work environment to which Plaintiff was subjected had exacerbated her previously diagnosed symptoms of anxiety and severe depression.

52.    Plaintiff was injured and negatively affected by Defendant because of the discriminatory work environment

53.    The acts and omissions committed by Defendant were willful, malicious and in reckless disregard of Plaintiff's federally protected civil rights.

54.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered damages including but not limited to,  lost wages, benefits and entitlements, damage to her career and reputation, personal humiliation, mental anguish, embarrassment, exacerbation of Plaintiff's medical conditions including anxiety,

severe depression, and chronic migraines; justifying an award including but not limited to, back pay, lost benefits, front pay, compensatory, consequential and punitive damages against Defendant.

**COUNT II**
**Claim against Defendant for Retaliation**
**in Violation of 42 U.S.C. §§ 12101 et seq.**

55.    Plaintiff hereby incorporates and re-alleges by reference herein the allegations in Paragraphs 1 through 42 above as though set forth fully herein.

56.    Plaintiff engaged in protected conduct within the meaning of the ADA when she complained of Defendant's discriminatory conduct.

57.    After and because Plaintiff engaged in this protected conduct, Defendant's agents, officials and/or employees treated her differently than similarly situated non-disabled employees by, among other ways: failing to fully and thoroughly investigate the harassing and retaliatory behaviors of Ms. Wypych, showing Plaintiff hostility, misconstruing conversation with Plaintiff to create the impression that Plaintiff requested a leave of absence, requiring that plaintiff remains on unpaid involuntary leave of absence, requiring that Plaintiff submit an application for leave despite her objections and despite Plaintiff's request to return to work, and terminating Plaintiff.

58.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost wages, benefits and entitlements, damage to her career and reputation,

personal humiliation, mental anguish, embarrassment, and exacerbation of Plaintiff's medical conditions including anxiety, severe depression, and chronic migraines; justifying an award including but not limited to, back pay, lost benefits, front pay, compensatory, consequential, and punitive damages against Defendant.

## <u>COUNT III</u>
**Claim against Defendant for Disability Discrimination and Hostile Work Environment in Violation of Civil Rights Act of 1992, Florida Statutes §§ 760.01 *et seq*.**

59.     Plaintiff hereby incorporates and re-alleges by reference herein the allegations in Paragraphs 1 through 42 above as though set forth fully herein.

60.     Plaintiff suffers from impairments that substantially limit one or more of her major life activities. Therefore, Plaintiff has a disability.

61.     During her employment with Defendant, Plaintiff was a qualified person with a disability in that she could perform the essential functions of her job with or without accommodation.

62.     At all times during her employment with Defendant, Plaintiff performed her job in a manner, which should have met Defendant's reasonable expectations.

63.     Plaintiff was subjected to unwelcomed harassment and a hostile environment on account of her disability that was sufficiently severe or pervasive to alter the terms, conditions, privileges of her employment, thereby creating an unlawful hostile environment for Plaintiff on account of her disability.

17

64.     Plaintiff informed Defendant of her disability and Defendant regarded Plaintiff as having a disability prior to Defendant's harassment of Plaintiff due to her disability and prior to Defendant placing Plaintiff on involuntary unpaid leave of absence.

65.     Defendant unlawfully discriminated against Plaintiff because of her disability and created a hostile work environment for Plaintiff, which interfered with Plaintiff's employment and created an objectively intimidating, hostile, intolerable, and offensive work environment, in violation of Fla. Stat. §§ 760.01 *et seq*. Such conduct included, but was not limited to, acting in a demeaning and condescending manner toward Plaintiff, misconstruing conversations with Plaintiff in order to create the impression that Plaintiff requested a leave of absence, revoking Plaintiff's access to Defendant's systems such that she was not able to report to work,  placing Plaintiff on involuntary unpaid leave despite Plaintiff's repeated objections, requiring Plaintiff to remain on involuntary unpaid leave and requiring that she applied for FMLA leave and short term disability in order to preserve her job, treating Plaintiff differently than non-disabled employees and terminating Plaintiff.

66.     Plaintiff was injured and negatively affected by Defendant because of the discriminatory work environment.

67.    Plaintiff further provided Defendant sufficient time to remedy the intolerable and hostile work environment. However, Defendant failed to take the necessary steps to remedy the hostile work environment.

68.    Plaintiff's treatment by Defendant was different and discriminatory when compared to that of Defendant's similarly situated, non-disabled employees.

69.    The acts and omissions committed by Defendant were willful, malicious and in reckless disregard of Plaintiff's protected civil rights.

70.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered damages including but not limited to, lost wages, benefits and entitlements, damage to her career and reputation, personal humiliation, mental anguish, embarrassment, exacerbation of Plaintiff's medical conditions including anxiety, severe depression, and chronic migraines; justifying an award including but not limited to, back pay, lost benefits, front pay, compensatory, consequential and punitive damages against Defendant.

## <u>COUNT IV</u>
**Claim against Defendant for Retaliation in Violation of Civil Rights Act of 1992, Florida Statutes §§ 760.01 *et seq*.**

71.    Plaintiff hereby incorporates and re-alleges by reference herein the allegations in Paragraphs 1 through 42 above as though set forth fully herein.

72.    Plaintiff engaged in protected conduct within the meaning of the FCRA when she complained of Defendant's discriminatory conduct.

73.    After and because Plaintiff engaged in this protected conduct, Defendant's agents, officials and/or employees treated her differently than similarly situated non-disabled employees by, among other ways: failing to fully and thoroughly investigate the harassing and retaliatory behaviors of Ms. Wypych, showing Plaintiff hostility, misconstruing conversation with plaintiff to create the impression that Plaintiff requested a leave of absence, requiring that Plaintiff remain on unpaid involuntary leave of absence, requiring that Plaintiff submit an application for leave despite her objection and despite Plaintiff's  request to return to work and terminating Plaintiff..

74.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost wages, benefits and entitlements, damage to her career and reputation, personal humiliation, mental anguish, embarrassment, and exacerbation of medical conditions including severe anxiety, migraine, depression, justifying an award including but not limited to, back pay, lost benefits, front pay, compensatory, consequential, and punitive damages against Defendant.

<u>**COUNT V**</u>
**Claim against Defendant for Race Discrimination and Hostile Work Environment in violation of Civil Rights Act of 1992, Florida statutes §§ 760.01 *et seq*.**

75.    Plaintiff hereby incorporates and re-alleges by reference herein the allegations in Paragraphs 1 through 42 above as though set forth fully herein.

76.     Plaintiff is Black and was employed by Defendant during the relevant time herein.

77.     During Plaintiff's employment, Defendant through its agents, officials, and/or employees, unlawfully discriminated against Plaintiff because of her race, in violation of the FCRA, by among other ways, subjecting plaintiff to disparate terms and conditions of employment and adversely affecting Plaintiff's working conditions, through among other ways, harassing behavior on account of Plaintiff's race and failing to take remedial action to stop the racially based discriminatory treatment to which Plaintiff was being subjected.

78.     Defendant's unlawful discrimination against Plaintiff because of her race created a hostile work environment for Plaintiff, which interfered with Plaintiff's employment and created an objectively intimidating, hostile, intolerable, and offensive work environment in violation of Fla. Stat §§760.01 *et seq*. Such conduct included, but was not limited to, issuing baseless corrective actions to Plaintiff, speaking in a condescending manner to Plaintiff, reassigning loans that were assigned to Plaintiff and the other Black employee to non-Black employees, and creating false narratives in order to bolster baseless corrective action issued to Plaintiff.

79.     Plaintiff was injured and negatively affected because of this discriminatory work environment.

21

80.     Plaintiff further provided Defendant with sufficient time to remedy the intolerable and hostile work environment. However, Defendant failed to take the necessary steps to remedy the hostile work environment.

81.     The acts and omissions committed by Defendant were willful, malicious and in reckless disregard for Plaintiff's protected civil rights.

82.     As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered and will continue to suffer lost wages, benefits and entitlements, damage to her career and reputation, personal humiliation, mental anguish, embarrassment and exacerbation of Plaintiff's medical condition including anxiety, severe depression and chronic migraines; justifying an award including, but not limited to, back pay, lost benefits, front pay, compensatory, consequential, and punitive damages against Defendant.

## **COUNT VI**
**Claim against Defendant for Retaliation in violation of Civil Rights Act of 1992, Florida statutes §§ 760.01 *et seq*.**

83.     Plaintiff hereby incorporates and re-alleges by reference herein the allegations in Paragraphs 1 through 42 above as though set forth fully herein.

84.     Plaintiff engaged in protected conduct within the meaning of the FCRA when she complained of Defendant's discriminatory conduct.

85.     After and because Plaintiff engaged in this protected conduct, Defendant's agents, officials and/or employees treated her differently than similarly

situated employees by, among other ways, failing to fully and thoroughly investigate the harassing and retaliatory behaviors of Defendant's employees; misconstruing conversations with Plaintiff in order to create the impression that Plaintiff had requested a leave of absence, placing plaintiff on an unpaid involuntary leave of absence, requiring that Plaintiff apply for leave despite her objection, and terminating Plaintiff.

86.    The acts and omissions committed by Defendant were willful, malicious, and in reckless disregard of Plaintiff's protected civil rights.

87.    As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered and will continue to suffer lost wages, benefits and entitlements, damage to her career and reputation, personal humiliation, mental anguish, embarrassment and exacerbation of Plaintiff's medical condition including anxiety, depression and migraines; justifying an award including, but not limited to, back pay, lost benefits, front pay, compensatory, consequential, and punitive damages against Defendant.

## COUNT VII
### Claim against defendant for violation of 42 U.S.C. §§ 2000(e) *et seq*.
### Race Discrimination and Hostile work environment

88.    Plaintiff hereby incorporates and re-alleges by reference herein the allegations in Paragraphs 1 through 42 above as though set forth fully herein.

89.     Plaintiff is Black and was employed by defendant during the relevant period herein.

90.     During Plaintiff's employment, Defendant through its owner, agents, officials, and/or other employees, unlawfully discriminated against Plaintiff because of her race, in violation of Title VII, by among other ways, subjecting Plaintiff to disparate terms and conditions of employment and adversely affecting Plaintiff's working conditions, by among other ways, harassing behavior on account of Plaintiff's race, reassignment of Plaintiff's loans to non-Black employees to interfere with Plaintiff's performance metrics and financial incentives, issuing a baseless corrective action to Plaintiff, failing to fully investigate complaints made by Plaintiff; and failing to take prompt remedial action to stop the racially based discriminatory treatment to which Plaintiff was being subjected.

91.     Plaintiff was injured and negatively affected because of this hostile work environment created by Defendant.

92.     The acts and omissions committed by Defendant were willful, malicious and in reckless disregard of Plaintiff's federally protected civil rights.

93.     As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered and will continue to suffer lost wages, benefits and entitlements, damage to her career and reputation, personal humiliation, mental anguish, embarrassment and exacerbation of Plaintiff's medical condition including

anxiety, depression and migraines, justifying an award including, but not limited to, back pay, lost benefits, front pay, compensatory, consequential, and punitive damages against Defendant.

## COUNT VIII
### Claims against Defendant for violation of 42 U.S.C. § 1981 – Race Discrimination

94.    Plaintiff hereby incorporates and re-alleges by reference herein the allegations in Paragraphs 1 through 42 above as though set forth fully herein.

95.    Plaintiff is Black and was employed by defendant during the relevant period herein.

96.    During  Plaintiff's employment, Defendant through its owner, agents, officials, and/or employees, unlawfully discriminated against Plaintiff because of her race, in violation of 42 U.S.C. § 1981, by among other ways, subjecting Plaintiff to disparate terms and conditions of employment and adversely affecting Plaintiff's working conditions, by among other ways, harassing behavior on account of Plaintiff's race, reassigning Plaintiff's loans to non-Black employees in order to interfere with Plaintiff's performance metrics and financial incentives, issuing baseless actions to Plaintiff and the other Black employee, failing to fully investigate complaints made by Plaintiff; and failing to take prompt remedial action to stop the racially based discriminatory treatment to which Plaintiff was being subjected.

97.     Plaintiff was injured and negatively affected because of this discriminatory work environment.

98.     The acts and omissions committed by Defendant were willful, malicious and in reckless disregard for Plaintiff's federally protected civil rights.

99.     As a direct and proximate cause of Defendant's discriminatory actions, Plaintiff has suffered and will continue to suffer lost wages in the form of back pay and front pay, lost benefits and entitlements, damage to her career and reputation, personal humiliation, mental anguish, emotional distress, loss of employment of life, embarrassment, exacerbation of Plaintiff's medical conditions including anxiety, chronic migraines and severe depression; justifying an award including, but not limited to, back pay, lost benefits, front pay, compensatory, consequential, and punitive damages against Defendant and compensatory consequential and punitive damages against Defendant.

**WHEREFORE**, Plaintiff Mary Elizabeth Smith respectfully requests that this Honorable Court grant the following relief:

a) Enter judgment on behalf of Plaintiff and against Defendant on all counts herein;

b) Award Plaintiff lost wages including front pay, back pay, and lost benefits;

c) Award Plaintiff compensatory damages allowable under law;

26

d) Award Plaintiff punitive damages for Defendant's willful violations;

e) Award Plaintiff reasonable attorneys' fees, court costs, expenses, prejudgment interests, and post-judgment interest; and

f) Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury as to all issues so triable as a matter of right.

Dated: May 24, 2023                    Respectfully Submitted,

                                       */s/Naphtalie Azor*
                                       Naphtalie Azor
                                       Fla. Bar No. 1024060
                                       AZOR LAW, PLLC
                                       50 N Laura St., Suite 2500
                                       Jacksonville, FL 32202
                                       (904) 902-3061
                                       (904) 717-2327 (Facsimile)
                                       nazor@azorlaw.com