# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

MARY ELIZABETH SMITH,

      Plaintiff,

v.                                  CASE NO: 3:23-cv-00628-TJC-PBD

AMERICAN NEIGHBORHOOD MORTGAGE
ACCEPTANCE CO. LLC d/b/a ANNIEMAC
HOME MORTGAGE,

      Defendant.

_____/

## PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Mary Elizabeth Smith ("Plaintiff" or "Ms. Smith"), by and through her undersigned counsel, responds in opposition to Defendant American Neighborhood Mortgage Acceptance Co. LLC d/b/a AnnieMac Home Mortgage's ("Defendant" or "AnnieMac") Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and Memorandum in Support (the "Motion") [Doc. 31]. In support of this Response, Plaintiff states as follows:

## SUMMARY OF FACTS

Plaintiff began working at AnnieMac as a Remote TPO closer for AnnieMac's wholesale division on or about April 5, 2021. *See* Exhibit. 1, offer Letter.  Plaintiff was a top performer and as a result of her performance, she was promoted to Team

Lead on or about September 16, 2021. *See* Exhibit 2, Personnel Action Form, Sept. 2021; *see also* Exhibit 3, Annual Review 2022. During the course of Plaintiff's employment at AnnieMac, she and other black employees were treated differently than the white employees. *See* Exhibit 4, Declaration of Mary Smith ("Smith Decl.) ¶¶ 6-16; *see also*, Exhibit 5, Deposition of Mary Smith ("Smith Dep.") at 89:11 – 90:24. Following another company layoff in June 2022, Plaintiff was demoted to the role of TPO Closer and Ed Siler became her supervisor on June 10, 2022. *See* Exhibit 6, Personnel Action Form, June 2022.  From that point on until her wrongful termination by AnnieMac, Ms. Smith was subjected to harassing and demeaning comments from Mr. Siler and subjected to a hostile work environment. *See* Exhibit 4, Smith Decl. ¶ 22.

On Friday August 19, 2022, the constant demeaning of her by her supervisor persisted culminated into an email correspondence from Mr. Siler falsely indicating that she was having performance issued making false statements concerning prior verbal warnings that did not occur. *See* Exhibit 7, Siler Email Correspondence, Aug. 19, 2022; *see also* Exhibit 8, Smith email concerning discrimination, Aug. 19, 2022. Consequently, Ms. Smith made a formal complaint of race discrimination to AnnieMac's leaders and the wholesale department via email on Friday, August 19, 2022 at 5:58 PM. *See Id*.   The following morning, on Saturday August 20, 2022, Ms. Smith received a phone call from Ms. Wypych to address her email concerning

the discrimination she faced. *See* Exhibit 4, Smith Decl.¶ 25; *see also* Exhibit 9, Deposition of Lisa Wypych ("Wypych Dep.") at 18:7-19:19.   Immediately upon informing Ms. Wypych that Mr. Siler's discriminatory behavior caused her PTSD symptoms to flare up, Ms. Wypych ordered Plaintiff not to return to work on the following Monday August 22, 2022. *See* exhibit 5, Smith Dep. at 128: 15-21. Ms. Wypych made no determination that the exacerbation of her symptoms made it so that Ms. Smith was unable to perform her job as required by AnnieMac's handbook, nor did she even wait for Plaintiff to formally apply for leave or take Paid Time Off pursuant to AnnieMac's policies. *See* Exhibit 5, Smith Dep. at 140:20-141:3 (stating "I never told her I can't perform my job."). Rather, at 10:07 AM on Saturday August 20, 2022, Ms. Wypych not only updated AnnieMac's system to reflect that Plaintiff was on leave, she also disabled Plaintiff's access to the system, making it impossible for Plaintiff to return to work or to even request Paid-time-off rather than going on leave. *See* Exhibit 10, Personnel Action Form, Aug. 2022.  *See* Exhibit 9, Wypych Dep. at 32:21 – 33:7. This was in clear violation of AnnieMac's own policies concerning paid-time-off of leave of absence. *See* Exhibit 11, AnnieMac Leave Policy.

Even though Ms. Smith, on several occasions indicated that she did not request to go on leave, she was not allowed to return to work. *See e.g.* Exhibit 12, Smith Email Correspondence; *see also* Exhibit 4, smith Decl. ¶ 28.   Instead, Ms.

Wypych continued to email the third-party company that handles AnnieMac's leave requests, asking them to email Ms. Smith documents so she can go on leave. *See* Exhibit 12, Email correspondence.  These communications by Ms. Wypych and her inability to return to work, plus the lack of funds to support herself as a result, caused further exacerbation of plaintiff's condition.  Even though AnnieMac policies allowed for use of PTO during an employee's leave of absence, Plaintiff was never given the opportunity to request use of her PTO because she did not have access to the system. *See* Exhibit 10, Personnel Action Form, Aug. 2022; *see also* Exhibit 11, AnnieMac Handbook Leave Policy.  As such, she remained on unpaid leave against her own will, and despite numerous requests for reinstatement, Defendant did not allow her to return to work.  On February 21, 2023, Ms. Smith received communication by AnnieMac that her employment was terminated due to the closure of the wholesale division in September 2022.

## MATERIAL FACTS IN DISPUTE SUPPORTING OPPOSITION TO SUMMARY JUDGMENT

### AnnieMac's Termination of Plaintiff

There are material facts in dispute concerning Defendant's allegation that Plaintiff was terminated "along with numerous other individuals … as a result of AnnieMac's closure of its entre Wholesale Lending Division on or about October 31, 2022. *See* Motion [Doc. 31] at 1. Plaintiff does not dispute receiving a letter dated February 21, 2023, informing her that her employment was terminated due to

the closure of the wholesale department. However, the record evidence is clear that Plaintiff was in fact de-facto terminated prior to the decision to close the wholesale department. The record evidence shows that Plaintiff was placed on leave against her will on or about August 2022 and was not allowed to return despite several requests to return to work *See* Ex. 4, Smith Decl. ¶ 28;  *see also* Exhibit 5, Smith Dep. at 128:2-129:4; *see also* Exhibit 10, Personnel Action Form, Aug. 2022 (showing that Ms. Wypych disabled Plaintiff's access to AnnieMac's system and placed her on leave on Saturday August 20, 2022 at 10:07 AM, when Ms. Smith complained of discrimination at 5:58 pm on August 19, 2022); *see also* Exhibit 12, Email correspondence.

### **Defendant's Treatment of Plaintiff and Prior Layoffs**

Defendant's allegation that Plaintiff was treated "more favorably than many of her colleagues in that she survived several rounds of layoffs" is also in dispute. Plaintiff was the only team lead in the wholesale division prior to being demoted to a TPO closer position in June 2022. *See* Smith Decl. ¶ 18. Therefore, the record evidence is clear that she was not terminated as part of the January and June Layoffs because she was the only person in her role who could allow for a more seamless transition, as she was still required to assign loans to the closers after June of 2022. *See* Exhibit 4, Smith Decl. ¶¶ 19-20. Additionally, Plaintiff's evaluations prior to Ed Siler becoming her supervisor are a consistent and clear indication that she was a top

performing employee at AnnieMac. *See* Exhibit 3, Performance Evaluations. Rather, it shows a clear contrast between how Plaintiff was treated by Virginia Strawely as compared to the discriminatory treatment of her by Ed Siler, the supervisor who subjected Plaintiff to a hostile work environment and issued her the baseless corrective action. *See* Exhibit 5, Smith Dep. at 131:17-24 (describing shift in critique of her work when Ed Siler became Ms. Smith's supervisor).

Furthermore, in addition to the above, Plaintiff survived layoffs because other black employees in the wholesale department were disproportionately terminated in the prior reduction in force that AnnieMac conducted. *See* Exhibit 4, Smith Decl. ¶¶ 12-14. On January 14, 2022, AnnieMac terminated two TPO Closers from the wholesale department, Cici Littles and Synnee Roy, and they were both black. *See* Exhibit 4, Smith Decl. ¶ 12; *see also* Exhibit 14, Wholesale Team RIF List. On February 3, 2022, AnnieMac terminated only one employee, a black closer named Shawyn Reddick who had previously made complaints concerning unfair treatment of her by Elizabeth Pitts. *See id.* Following the termination of Ms. Reddick, only three black employees remained in the wholesale team, Ms. Smith, Mr. Lynn Sermons and a black Hispanic woman, Marva Rateliff who was also laid off as part of the June 2022 reduction in force. *See* Exhibit 4, Smith Decl. ¶ 12-14; *see also* Exhibit 14, Wholesale Team RIF List. Following the June 2022 reduction in force. The wholesale team had 12 closers, 5 of whom were black and 7 of whom were

white. *See id*. Between January of 2022 and June 2022, 4 out of the 5 black TPO closers from the wholesale team had been terminated as part of the reduction in force, leaving only Lynn Sermons. *See id*. Plaintiff was then demoted and became the second black closer along with Mr. Sermons. *See* Exhibit 4, Smith Decl. ¶¶ 17-18.

### Plaintiff's Complaints about Ms. Pitts

There are material facts in dispute concerning the Plaintiff's complaints regarding the behavior of Elizabeth Pitts. Defendant alleges that Plaintiff reported that Ms. Pitt treated her differently than Mr. Sermons. *See* Mot. at 4-5. This is incorrect. Plaintiff reported that Ms. Pitts was engaged in inappropriate communications with Mr. Sermons and that Ms. Pitts retaliated against Plaintiff following her complaints concerning Ms. Pitts behavior. *See* Smith Decl. ¶ 15. When Plaintiff ultimately followed up with Ms. Wypych concerning the result of the investigation into Ms. Pitts, Ms. Wypych told her in sum and substance that it was none of her business. *See* Exhibit 5, Smith Dep. at 129.

### Reclassification of Plaintiff's position

There are material facts at issue concerning the reclassification of Plaintiff's employment on or about June of 2022. Defendant alleges that Plaintiff's position was reclassified, and that Plaintiff was not demoted. This conflicts with the record evidence.  Plaintiff received a demotion as a result of the reduction in force. See Exhibit 5, Smith Dep. at 87:9-19. Plaintiff did not receive the monthly bonuses that

she would otherwise receive as Team Lead. *See* Exhibit 15, Pay Stubs (showing monthly bonuses in May and June but not in July or August). Additionally, even though her title changed, Plaintiff was still required to do the work of both a TPO closer and a Team Lead and was told that she would be easing into the position of a TPO closer after her return from vacation. *See* Exhibit 5, Smith. Dep. at 87:9-19; *see also* Exhibit 13, Investigation Report.

### Plaintiff's Performance after June 2022

There are material facts at issue concerning Plaintiff's performance after June 2022. Defendant alleges that Plaintiff's "job performance declined, and she consistently failed to close the required number of loans …" Motion at 7. This is inaccurate. Rather, the record shows that Plaintiff was subjected to unfair treatment by Mr. Siler because of her race. Plaintiff was told that the company was slowly transitioning and that they needed her to perform both the work of a team lead and of a TPO closer, two very demanding positions. *See* Exhibit 16, job descriptions. Although Plaintiff could assign herself loans and work on them, but she was still required to perform the role of a team lead as other team members were not familiar with how to assign loans to themselves and Plaintiff was required to continue assigning loans until at least July of 2022. *See* Exhibit 4, Smith Decl. ¶¶ 19-20.

Plaintiff's demotion became effective on June 10, 2022. Plaintiff had a preplanned vacation in June and was on vacation until July 1, 2022, which would have prevented Plaintiff from closing any loans. *See* Exhibit 17, email correspondence (confirming that Plaintiff was on vacation until July 1, 2022); see also Ex. 13, Investigation Summary ("Ed confirmed that Liz was going on vacation at the end of June, he decided to utilize her in a team lead role (assign loans) since it didn't make sense for her to try to transition to a closer before going on vacation."); *see also* Exhibit 11, AnnieMac Handbook Leave Policy (stating that employees are not allowed to work while out on leave or using PTO).  Additionally, the slower transition was deemed necessary because AnnieMac's loan closing process had changed since Plaintiff last worked as a closer. *See* Exhibit 5, Smith Dep. at ___: 7-14. ("I was told that eventually I would be able to go ahead and start pulling some loans and slowly moving back into the process because I hadn't closed in a while and the processes and stuff had changed. So I had no clue on when it would happen. But I still was doing the job of a team lead. and that's it.").  Furthermore, defendant's own record mention that TPO closers could not self-assign loans until July 2022, so Plaintiff was responsible for assigning loans to the closers. *See* Exhibit 13, investigation Report (indicating that "Ed changed the system in July). Defendant communicated to plaintiff not only that she did not have to work as a closer but also

that she would be slowly transitioning into the role upon her return from vacation in July while working in both roles.

**Baseless Corrective Action**

There are material issues of facts concerning a verbal warning received by Plaintiff. Defendant alleges, through self-serving statements, that Plaintiff received a verbal warning due to a decline of her job performance. *See* Mot. [Doc. 31] at 7. This is not inaccurate and is not supported by the record. Plaintiff never received a verbal warning from Mr. Siler. *See* Exhibit 5, Smith Dep. at 131:25-132:2. In fact, The email sent by Mr. siler is yet another instance of discrimination and shows a pattern in his behavior, as Mr. Siler had also issued a baseless corrective action to Mr. Sermons and invited Plaintiff on the call in order to embarrass Mr. Sermons and Ms. Smith. *See* Exhibit 5, Smith Dep. 105:13- 108:11. This is evident as Plaintiff was never asked to attend a meeting in which a white employee received corrective actions. *See* Exhibit 5, Smith Dep. 152:13-19.

Defendant has produced no "recap email" for the August 5, 2022 verbal warning that Mr. Siler allegedly issued Plaintiff. If Mr. Siler engaged in follow up emails to recap verbal warnings as he claimed to have done through his August 19, 2022 email, presumably there would have been an email for the August 5, 2022 corrective action. There is no such email correspondence on the record. Rather, Mr.

Siler, through his August 19, 2022 email correspondence to Plaintiff, created a false and baseless corrective action in order to harass Plaintiff and create the impression that she was warned about her job performance. *See* Exhibit 8, email correspondence regarding discrimination. Mr. Siler called Plaintiff to yell at her concerning her failure to respond to communications. *See* Exhibit 4, Smith Decl. ¶ 21. He did so even though he was already told by another employee that Ms. Smith was in fact responsive and that the loan closure date had been moved. *See* Exhibit 18, email correspondence. When Plaintiff confirmed the same during the call, Mr. Siler then sent his baseless corrective action concerning a conversation that never occurred. *See* Exhibit 4, Smith Decl. ¶ 23.

### *Plaintiff was placed on leave against her will*

There are material facts at issue concerning whether Plaintiff requested to go on leave. Defendant through self-serving statement of Ms. Wypych alleges that Plaintiff requested to go on leave on Saturday August 20, 2022. This is untrue and is not supported by the record evidence. Plaintiff did not request to go on leave. See In fact, Defendant after receiving Plaintiff's complaint of discrimination rushed to keep Plaintiff from returning to the office by calling Plaintiff on a Saturday even though neither Ms. Wypych nor Plaintiff were scheduled to work, and there was no urgency. *See* Exhibit 9, Wypych Dep. at 17:19 – 19:19. Ms. Wypych could not wait until the following Monday to call Plaintiff to discuss the August 19, 2022 complaint

of discrimination and put her on forced leave on August 20, 2022. *See id.* When Plaintiff attempted to log into her computer, she was already denied access even though she had not requested to go on leave, a clear violation of AnnieMac's own leave policy as described in more details below.

### AnnieMac's Leave Policy

It is evident that the placement of Plaintiff on a forced leave of absence was retaliatory because AnnieMac did not follow its own leave policy. AnnieMac listed the reason for Plaintiff's leave of absence as "employee's serious health condition.". See Exhibit 19, Leave Request Details. Pursuant to the employee handbook, AnnieMac requires that medical certification be provided prior to the beginning of leave if an employee is to take leave for a "serious health condition". See Exhibit 11, AnnieMac Handbook Leave Policy. The handbook specifically states that if an employee fails to provide the necessary medical information prior to taking leave, AnnieMac "may delay the commencement of your leave, withdraw any designation of FMLA leave or deny the leave…" *Id.* AnnieMac's handbook further provides That the failure to provide the necessary information prior to going on leave may result in "disciplinary action, up to and including termination." *Id.* Respondent alleges that Ms. Smith was placed on leave because she indicated that she was "considering taking some time off." *See* Exhibit 20, AnnieMac Position Statement. AnnieMac's own policies dictate that even if Plaintiff were to request leave through

that August 20, 2022, phone call with Ms. Wypych, the statement alone would not be sufficient for her to take leave or else they would risk termination. Ms. Wypych's self-serving statement concerning the reason for placing Plaintiff on leave is not supported by the record in this case.

## MEMORANDUM OF LAW

### I.    <u>Summary Judgment Standard</u>

Summary judgment is appropriate in only those cases in which there is no genuine dispute as to a material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. (Internal citation and quotations omitted.).

To defeat a motion for summary judgment, a plaintiff need not produce evidence that would require a verdict in her favor. Rather, she need only demonstrate that there is sufficient evidence "to require a jury or a judge to resolve the parties' differing versions of the truth at trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-249 (1986) (Quoting First National Bank of Arizona v Cities Services Co.,

391 U.S. 253, 288-89 (1968)). In contrast, a court's decision to grant a motion for summary judgment is warranted only "… where it is quite clear what the truth is…" *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 467 (1962).

In the trial court's consideration of a summary judgment motion, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson*, 477 U.S. at 255. It is reversible error for a court to "resolve genuine disputes of fact in favor of the party seeking summary judgment…" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (internal citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000) (quoting Liberty Lobby, 477 U.S. at 268.).

In the instant case, Defendant has essentially disregarded the legal standard governing amotion for summary judgment by ignoring allegations, or construing facts in a light most favorable to itself. As there are numerous material facts in dispute, Defendant's Motion should be denied.

## II.    Plaintiff has demonstrated genuine disputes of material fact exist which prove a prima facie case of race and disability discrimination.

Plaintiff has shown that there are genuine disputes of material fact proving discrimination in this case. "[t]he plaintiff will always survive summary judgment if he or she presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent. "*Lewis v. City of Union City*, 934 F.3d 1169, 1185

(11th Cir. 2019). (internal alterations and quotation marks omitted.). In other words, a plaintiff may still survive summary judgment if he "presents … 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination. *Id.* (citations omitted). Accordingly, Defendant's Motion must be denied because Plaintiff has demonstrated a genuine dispute of material fact to be decided by a jury as to her claim of discrimination.

In the present case, the record evidence shows the disparate treatment of Black employees at AnnieMac, through the disproportionate termination of black employees. See Exhibit 4, Smith Decl. ¶¶12-16; *See also* Exhibit 14, Reduction in Force List. For instance, in the case of Ms. Reddick, as described above, she was the only employee terminated in February 2022 as part of an alleged reduction in force by Defendant after complaining of discriminatory treatment by Ms. Pitts. *See* Exhibit 14, Reduction in Force List. Further, Ms. Pitts regularly reassigned more loans to white employees depriving black employees of the ability to earn a higher bonus. *See* Exhibit 4, Smith Decl. ¶¶ 7-8. Furthermore, Mr. Siler invited Plaintiff to a where the only other black employee received a corrective action.[1] *See* Exhibit 5, Smith Dep. at 105:13- 106: 15. Plaintiff was never invited to calls where white employees received corrective actions.

---

[1] Ms. Wypych's testimony concerning the call should be given no weight because Ms. Wypych was not present during the call and therefore does not have firsthand knowledge of the same.

Similarly, immediately upon informing Ms. Wypych of her disability, Plaintiff was placed on forced leave and was ot allowed to return; in violation of AnnieMac's own policies. Accordingly, Plaintiff has established a jury issue for discrimination.

**III.   Defendant's reason or terminating Plaintiff is a pretext for discrimination because Defendant never intended on allowing Plaintiff to return to work and Defendant retaliated against Plaintiff due to her August 19, 2022, complaint of discrimination in the workplace.**

There are material issues of fact on the record concerning the real reason for terminating Plaintiff's employment. The record is clear that Defendant violated its own policies when it placed Plaintiff on forced leave and that Plaintiff was placed on leave due to her August 19, 2022 email correspondence complaining of discrimination. At the summary judgment stage, the district court must evaluate whether he plaintiff has demonstrated such weaknesses … or contradictions in the employer's proffered reason for its action that a reasonable fact-finder could find them unworthy of credence". *Hornsby-Culpepper v. Ware*, 906 F. 3d 1203, 1312 (11th Cir. 2018) (internal citation omitted).  Here Plaintiff has demonstrated disputes of material fact concerning AnnieMac's proffered reasons.

Defendant called Plaintiff immediately upon her complaint of discrimination and placed her on unpaid leave. Then refused to allow her to return to work despite her objections. Following this, Defendant never intended on fully investigating and

did not fully investigate the reported discrimination in the workplace. In her two-day investigation, Ms. Wypych interviewed several individuals but did not interview the only other black TPO closer in the wholesale department, solely relying on the words of Mr. Siler and other white employees to reach her conclusion concerning race discrimination in the workplace. *See* Exhibit 9, Wypych Dep. at 39: 17-24. Further, as clearly shown on the record, Defendant regularly uses its RIF as a pretext to terminate black employees and to retaliate against employees who make complaints of discrimination. *See* Exhibit 4, Smith Decl. ¶ Accordingly, Defendant's Motion must be denied as there exist sufficient material issues of fact concerning the fact that its stated reason for termination is pretextual.

## IV. <u>Plaintiff has demonstrated genuine disputes of material fact exist which prove a prima facie case of discrimination</u>

Plaintiff has demonstrated genuine issues of facts proving a hostile work environment for herself and other black employees.  Plaintiff has not only shown evidence of constant deprivation of opportunities but also of constant demeaning comments and Wrongful accusations by Mr. Siler for the entire period when he was assigned to be her direct supervisor. Accordingly, Defendant's Motion must be denied.

WHEREFORE, for the foregoing reasons, and other reasons this Honorable Court may find, Plaintiff Mary Elizabeth Smith, respectfully requests that Defendant's Motion [Doc. 31] be denied in its entirety.

Dated:  August 19, 2024                    Respectfully Submitted,

*/s/Naphtalie Azor*
Naphtalie Azor
Fla. Bar No. 1024060
AZOR LAW, PLLC
50 N Laura St., Suite 2500
Jacksonville, FL 32202
nazor@azorlaw.com
lkennedy@azorlaw.com
info@azorlaw.com
Phone: (904) 902-3061
Fax: (904) 680-2261
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I presented the foregoing to the Clerk of the Court

for filing and uploading to the CM/ECF system, which will automatically send email

notification of such filing to the attorneys of record on this 19th day of August 2024.

By:    */s/Naphtalie Azor*
        Naphtalie Azor, Esq.
        Counsel for Plaintiff